UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DWAYNE FRANCIS,

                            Plaintiff,

            -against-

THE CITY OF NEW YORK, et al.,

                            Defendants.

**REPORT & RECOMMENDATION ON
DAMAGES AGAINST DEFAULTING
DEFENDANTS**

**15-CV-7997 (VSB) (KHP)**

TO:    THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE
FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

Plaintiff Dwayne Francis ("Plaintiff" or "Mr. Francis") brought this action against:

Parkchester DPS LLC, Parkchester North Condominium, Parkchester Preservation Management,

LLC, Parkchester South Condominium, Inc. (collectively, the "Parkchester Entities"); the City of

New York; and Leoncio Pimintell, Edward Leon, Michael Bushrod, Patrice London, Angel

Figueroa, and Carlos Capella (collectively, the "Individual Defendants").  In his Fourth Amended

Complaint, Plaintiff alleges that Defendants violated his civil rights under the Fourth and

Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. Section 1983.

He also asserts pendent state law claims against Defendants for malicious prosecution, abuse of

process, negligence, and negligent infliction of emotional distress.  (Doc. No. 98 ("Fourth Am.

Compl.").)[1]

---

[1] Plaintiff filed a Fifth Amended Complaint (doc. no. 189), but that Complaint was filed after the Clerk of Court entered a default against Defendants Figueroa and Capella.  (Doc. Nos. 149 and 150.)  Thus, for purposes of this decision, citations are to the Fourth Amended Complaint, which was served on the defaulting Defendants.

Individual Defendants Figueroa, Capella, Bushrod, Pimintell, Leon, and London were special patrolmen for the privately-owned residential community of Parkchester, located in the Bronx. (*Id.* ¶ 20.) All were employed by the Parkchester Department of Public Safety ("PDPS"), an organization of "special patrolmen" within the meaning of the New York City Administrative Code Section 14-106. (*Id.* ¶¶ 8-9, 20.) Special patrolmen are appointed by the New York City Police Commissioner, licensed by the City of New York, and authorized to be New York State peace officers.[2] (*Id.* ¶ 9.) Special patrolmen are responsible for the safety and security of residents and visitors in Parkchester.

The incident giving rise to this suit occurred on October 30, 2014. According to the Complaint, Mr. Francis was standing outside a convenience store at 64 Metropolitan Oval at about 8:15 a.m. when he was approached by Figueroa, Capella, Pimintell, and Leon. (*Id.* ¶¶ 27-28.) Plaintiff claims that these four Defendants surrounded him and then followed him when he attempted to walk away. (*Id.* ¶¶ 29-30.) For no apparent reason, Figueroa then swung his fist at Mr. Francis while the other three Defendants encircled him again and backed him up into the street. (*Id.* ¶¶ 31-32.) Figueroa then kicked at Mr. Francis, and Mr. Francis tried to defend himself while backing away. (*Id.* ¶¶ 33-35.) None of the officers with Figueroa did anything to intervene or prevent the assault. (*Id.* ¶ 36.) The whole situation caused Mr. Francis to fear for his physical safety and that he would be arrested. (*Id.* ¶ 35; Doc. No. 254-13 ("Francis Aff.") ¶¶ 7, 9.) Mr. Francis also experienced pain in his leg from being kicked. (Francis Aff. ¶ 9.)

---

[2]Parkchester DPS LLC was formed in 2014 and does business as the PDPS. It is the successor entity to the Parkchester South Condominium, Inc. Department of Public Safety, the technical employer of the Individual Defendants at the time of the incident. (Doc. No. 254-5 ¶2.) To conform with the allegations in the Complaint, the Court refers to the employing entity as PDPS.

Mr. Francis ultimately escaped from Defendants and went directly to Defendant London, a Sergeant at PDPS, to report the incident. (Fourth Am. Compl. ¶¶ 37-38; Francis Aff. ¶ 11 and Ex. B.) London told Mr. Francis to go to the PDPS office. At the office, London took Mr. Francis to a conference room where Mr. Francis relayed the incident to London and the then head of the PDPS. (Fourth Am. Compl. ¶ 39.) Mr. Francis then requested that PDPS retrieve and view surveillance video of the incident. (*Id.* ¶¶ 39-42.) At first, the head of PDPS denied that the video existed. (*Id.*) After Mr. Francis insisted that the video did exist, the head of PDPS left the room, supposedly to view the video, while Mr. Francis waited. (*Id.* ¶¶ 42-43.)

However, the situation changed quickly. While Mr. Francis was waiting for the head of PDPS to return, Defendant Bushrod (who was not involved in the earlier incident), entered the room and placed Mr. Francis in handcuffs. (*Id.* ¶¶ 44-45.) Apparently, while Mr. Francis was waiting for the head of PDPS to return to the conference room, Figueroa, Capella, Pimintell, and Leon had filed a report contradicting Mr. Francis's story and alleged that Mr. Francis was the aggressor in the incident. They claimed that Mr. Francis had "struck [Figueroa] three (3) times in the arms with closed fists." (*Id.* ¶¶ 51-53; Doc. No. 254-7 ("Police Complaint Form"); Doc. No. 254-9 ("Police Report"); Doc. No. 254-10 ("Investigative Report"); Doc. No. 254-11 ("Closing Report").) Taking the special patrolmen's word over Mr. Francis's, PDPS directed that Mr. Francis be handcuffed and arrested. (Fourth Am. Compl. ¶¶ 44-47.)

Mr. Francis was taken to the New York Police Department's ("NYPD") 43rd precinct and placed in a cell for several hours before being taken to central booking by NYPD officers. (*Id.* ¶ 48.) At central booking, Mr. Francis learned he was being charged with the crimes of: (1) assault in the third degree; (2) menacing; (3) menacing in the second degree; and (4)

harassment in the second degree. (*Id.* ¶ 50.) All told, Mr. Francis was held in custody for approximately 13 and 1/2 hours until he was released pending further criminal proceedings on these charges. (Doc. No. 253 ("Pl.'s Br.") 1, 11; Doc. No. 254-8 (prisoner arraignment form reporting period of custody and detention); Francis Aff. ¶¶ 13-14.)

Mr. Francis maintained his innocence and, ultimately, his attorney obtained the video of the incident. The surveillance video showed that Figueroa approached Mr. Francis and assaulted him without provocation—corroborating Mr. Francis's side of the story. (Fourth Am. Compl. ¶ 57; Francis Aff. Ex. A (video of incident) and Ex. B (Mr. Francis' Civilian Complaint).) Mr. Francis was forced to return to court on several occasions in connection with the charges against him, and finally secured a dismissal of all charges pursuant to a motion by the district attorney. (Fourth Am. Compl. ¶¶ 58-59; Francis Aff. ¶¶ 16, 18.) Plaintiff alleges that the PDPS knew the video exonerated him, but nonetheless forwarded the false charges to the district attorney's office and withheld the video. (Fourth Am. Compl. ¶¶ 46-47.)

Shortly after the incident, PDPS Captain Douglass Maresca commenced an investigation into the incident. As part of his investigation, he interviewed Figueroa and Capella and viewed the surveillance video.[3] (Maresca Aff. ¶ 3; Closing Report 2.) Ultimately, Maresca determined that the video of the incident corroborated Mr. Francis's version of events and that Figueroa and Capella had made false reports about the incident.[4] Maresca prepared a report in which

---

[3] In connection with the instant motion, Plaintiff submitted an affidavit from Maresca, as well as portions of his sworn deposition testimony. Maresca was the supervisor on duty on the day of the incident. (Doc. No. 254-5 ("Maresca Aff.") ¶ 3.) Maresca authenticated the Omniform System arrest report for Mr. Francis, which contains statements made by Defendants Figueroa and Capella about the incident that formed part of the basis for his investigation report. (Doc. No. 254-6.)

[4] The Court has independently reviewed the video, submitted in connection with the instant motion, and agrees that it corroborates Plaintiff's allegations.

he wrote that "Figueroa became engaged in an off duty physical confrontation with Mr.

Dwayne Francis," and that "Figueroa and Capella made false statements regarding [the]

incident which caused the arrest of Mr. Francis." (Closing Report 2.)   As a result of Maresca's

investigation findings, PDPS terminated the employment of both Figueroa and Capella.  (Doc.

No. 254-12 (Termination Letters).)

Mr. Francis attests that the whole experience caused him: emotional pain and distress;

significant loss of sleep; humiliation and embarrassment in front of his family; paranoia from a

fear of being falsely targeted again by law enforcement; and a loss in his sense of security in his

own neighborhood.  (Francis Aff. ¶ 19.)

## PROCEDURAL HISTORY

Plaintiff served the Fourth Amended Complaint on Figueroa on January 27, 2017 by

personally serving him at his residence.  Figueroa's mother accepted service of the Complaint.

(Doc. No. 254-2.)  Additionally, on January 30, 2017, Plaintiff mailed a copy of the Complaint to

Figueroa.  (*Id.*)  On April 11, 2017, Plaintiff served Capella pursuant to Federal Rule of Civil

Procedure 4(e)(1) and New York Civil Practice Law and Rules ("C.P.L.R.") Section 308(4) by

affixing a copy of the Fourth Amended Complaint to the door of Capella's residence and

sending him a copy in the mail.  (Doc. No. 254-3.)

Neither Figueroa nor Capella answered or otherwise responded to the Complaint or

made an appearance in this action.  On July 31, 2017, the Clerk of this Court entered a default

against both Defendants.  (Doc. Nos. 149 and 150.)  The Honorable Vernon S. Broderick then

issued an Order to Show Cause for Entry of Partial Judgment of Default scheduling a hearing for

October 6, 2017.  (Doc. Nos. 151 and 152.)  Plaintiff served this Order on Capella and Figueroa

on August 15, 2017. (Doc. Nos. 155 and 156.)  Neither Defendant appeared.  A second hearing was scheduled for December 20, 2017.  Plaintiff served a copy of the order scheduling the December hearing on Defendants.  (Doc. No. 185.)  Neither Defendant appeared at the December 20, 2017 hearing.  Consequently, on December 28, 2017, Judge Broderick issued a default judgment against Figueroa and Capella.  (Doc. No. 200.)

Because litigation was ongoing against the other, non-defaulting Defendants, an inquest on damages was held in abeyance pending the resolution of the remainder of the action.  (*Id.*) Plaintiff reached a settlement of his claims against the remaining Defendants and, on October 11, 2018, submitted a Stipulation and Order of Dismissal with respect to the non-defaulting Defendants.  (Doc. No. 247.)  Judge Broderick then referred this matter to the undersigned to conduct an inquest on damages with respect to the two defaulting Defendants.

Plaintiff filed his motion for damages against Figueroa and Capella on July 16, 2019 (doc. no. 252), and this Court held a hearing on November 6, 2019.  Plaintiff seeks damages in connection with three causes of action: false arrest, malicious prosecution, and assault. Plaintiff served copies of his motion papers and notice of the November 6, 2019 hearing on the defaulting Defendants, but neither appeared.  (Doc. Nos. 259 and 260.)  As a result, no testimony was taken at the hearing.

While courts often conduct an inquest hearing to determine the appropriate award, an inquest hearing is not always required.  Indeed, courts have awarded damages by relying solely on the papers provided by the plaintiff.  *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 189 (2d Cir. 2015).  The

Court finds that an inquest hearing is not necessary here, as an appropriate award can be determined based on the papers submitted by Plaintiff.

## LEGAL STANDARDS

### A. Liability

Rule 55 of the Federal Rules of Civil Procedure ("Rule 55") governs judgments against a party that has failed to plead or otherwise defend itself in an action. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–505 (2d Cir. 2011); *Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 392–93 (S.D.N.Y. 2012). Rule 55 requires the clerk of the court, upon notification from the moving party, to note the default of the party failing to defend the suit. *See Priestley*, 647 F.3d at 504–505 (citing Fed. R. Civ. P. 55(a)). Once the clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b). *See Pacific M. Int'l, Corp.*, 888 F. Supp. 2d at 392–93.

A default constitutes an admission of all well-pled factual allegations in the complaint. Thus, the allegations, as they pertain to liability, are deemed true. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (noting that an entry of default establishes liability, but does not constitute an admission of damages). However, a plaintiff is not entitled to a default judgment as a matter of right. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 187. Indeed, the plaintiff bears the burden to demonstrate that its uncontroverted allegations are sufficient to establish the defendant's liability on each asserted cause of action. *Id.*; *see also Morales v. Mw Bronx, Inc.*, No. 15-cv-6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (collecting cases). Although Judge Broderick issued an order that a default judgment be entered against Figueroa and Capella, indicating that all

uncontroverted allegations are admitted, this Court must, nevertheless, analyze the allegations in the Complaint to determine if the elements of each claim for which Plaintiff seeks damages have been adequately pleaded for purposes of establishing liability.  *See Au Bon Pain Corp. v. Artect*, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### 1.  1983 Claims for False Arrest and Malicious Prosecution

Plaintiff contends that Defendants submitted a false report claiming that he instigated a fight and assaulted Figueroa.  This report caused Plaintiff to be arrested without probable cause and subjected him to a malicious prosecution for four crimes he did not commit, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (Fourth Am. Compl. ¶¶ 48-55.)  To prevail on these claims, Plaintiff must allege and prove that Defendants deprived him of a right guaranteed by the Constitution or laws of the United States while acting under the color of state law.  42 U.S.C. § 1983; *see also Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *O'Neal v. County of Nassau,* 992 F. Supp. 524, 530–31 (E.D.N.Y. 1997), *aff'd,* 133 F.3d 907 (2d Cir. 1998).

Here, Plaintiff has satisfied his burden of alleging that both Figueroa and Capella acted under the color of state law insofar as he alleged that both were appointed by the New York City Police Commissioner, licensed by the City of New York, and authorized to be New York State Peace Officers.  *See Ortiz v. Parkchester N. Condo.*, 16-CV-9646 (VSB), 2018 WL 2976011, at *4 (S.D.N.Y. June 13, 2019) (holding that special patrolmen of PDPS act under the color of state law when performing duties normally performed by NYPD officers, such as making arrests and filing charges).  Additionally, he has identified constitutional rights that were violated—the right to be free from arrest and prosecution in the absence of probable cause.  *See, e.g., Ricciuti*

*v. New York City Transit Auth.*, 124 F.3d 123 (2d Cir. 1997), *overruled on other grounds by City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005).

Plaintiff also has satisfied his burden of alleging that Defendants caused him to be arrested and prosecuted without probable cause by virtue of his allegations that both Defendants supplied false information to the arresting officers, the NYPD, and the district attorney's office. *See Zahrev v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000) (in "cases where the action of some other person occurs after the defendant's alleged misconduct but before the deprivation of liberty" usually "courts consider causation as a separate issue"); *Colon v. City of New York*, 09 CV 0008(JBW) and 09 CV 0009(JBW), 2012 WL 691544, at *5 (E.D.N.Y. Feb. 9, 2012) (arrest and prosecution of plaintiffs was a natural consequence of defendants providing false information to the police about plaintiffs' conduct and, therefore, plaintiffs satisfied requirement of showing that defendants' actions caused the deprivation of plaintiffs' constitutional rights), *adopted by* 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012); *see also Smalls v. City of New York*, 181 F. Supp. 3d 178, 185–86 (E.D.N.Y. 2016) (allegation that officer filed an accusatory instrument that contained false information supported claim for malicious prosecution); *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, No. CV–07–5441 (DGT)(RML), 2009 WL 817852, at *3 (E.D.N.Y. Mar. 27, 2009) (denying motion to dismiss malicious prosecution claim where plaintiff argued that defendant falsely alleged that he had stolen computers).

Finally, Plaintiff has adequately pleaded facts supporting claims of false arrest and malicious prosecution. To state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "An arrest made on probable cause is privileged, and probable cause exists 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Shain v. Ellison*, 273 F.3d 56, 67–68 (2d Cir. 2001) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)), *abrogated on other grounds by Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 350 (2012).

Here, Plaintiff has pleaded sufficient facts to meet these four elements, insofar as he has asserted that both Defendants falsely reported that Plaintiff assaulted Figueroa, as reflected in the NYPD's online arrest and complaint system, causing him to be arrested and charged with various crimes. The arrest resulted in Plaintiff's confinement for nearly 14 hours. Plaintiff was conscious of the confinement, objected to it, and claimed that he was innocent. Furthermore, because he alleged that the arrest was based on false information, Plaintiff has sufficiently demonstrated that his arrest was not otherwise privileged. *Colon*, 2012 WL 691544, at *6; *Shain,* 273 F.3d at 67–68. Thus, Plaintiff has met his burden of pleading and proving a Section 1983 claim of false arrest.

To establish a malicious prosecution claim, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted); *see also Posr v. Court*

*Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).  Malice can be inferred from a lack of

probable cause.  *See Manganiello*, 612 F.3d at 163.

Under New York law, police officers can initiate a prosecution by filing charges or

accusatory instruments.  *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (where

a police officer provides false information to a prosecutor, what the prosecutor does has no

impact on the police officer's initial, tortious behavior); *Murphy v. Lynn*, 118 F.3d 938, 944 (2d

Cir. 1997); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568, 571 (2d Cir. 1996) *as amended*

(May 21, 1996) (finding that there was "no dispute as to the first . . . element[ ]" of a malicious

prosecution claim where the plaintiff "was immediately taken to the police station and was

charged" by the defendant officer); *see also Lovitch v. Lovitch*, No. 11 Civ. 2536(ER)(LMS), 2015

WL 1047807, at *7 (S.D.N.Y. Mar. 10, 2015) (false report of child sex abuse by defendants that

led to plaintiff's arrest and prosecution supported claim of malicious prosecution).

Here, Plaintiff alleges that the false information provided by Figueroa and Capella to the

PDPS, NYPD, and, ultimately, the district attorney, resulted in the commencement of a criminal

proceeding against him.  He also alleges that the charges were dismissed after the video of the

incident came to light and demonstrated that Defendants had lied.  Thus, the proceedings

terminated in Plaintiff's favor.  Hence, Plaintiff has met his burden of pleading and proving a

Section 1983 claim of malicious prosecution against Defendants Figueroa and Capella.

### 2.  Assault

In addition to his Section 1983 claims for false arrest and malicious prosecution, Plaintiff

seeks damages for his state law claim of assault.  To establish a claim for assault, a plaintiff

must show that another person: (1) "made an intentional attempt, displayed by violence or

threatening gesture, to do injury to, or commit a battery upon, his or her person" that (2) put

the plaintiff "in imminent apprehension of harmful or offensive contact." *Lucas v. South*

*Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 150 (E.D.N.Y. 1998) (internal quotation marks and

citations omitted). Evidence of injury is not necessary to establish liability. *Brutus v. Silverseal*

*Corp.*, 439 F. App'x 28, 29 (2d Cir. 2011). In this case, Plaintiff pleads that Figueroa swung at

and kicked him, and that Capella joined others in surrounding Plaintiff in a menacing way and

backed him into the street. Plaintiff alleged that both Defendants' actions caused him to fear

he would be harmed. These facts are sufficient to establish liability on the assault claim.

### B. Damages

Having established liability through the well-pleaded allegations in the Complaint, the

Court now turns to the question of damages awardable for these causes of action. Though

well-pleaded allegations as to liability are deemed admitted by a defaulting defendant, the

same is not true for damages. Rather, a plaintiff bears the burden of establishing an evidentiary

basis for the damages he seeks against a defaulting defendant. *See Bricklayers & Allied*

*Craftworkers Local 2, Albany, N.Y. Pension Fund*, 799 F.3d at 189; *International Ass'n of Heat &*

*Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc.*, No. 15-CV-6909-LTS, 2017 WL 5153565, at *5–

6 (S.D.N.Y. Nov. 6, 2017). Plaintiff seeks an award in the range of $60,000 to $150,000 from

each of the defaulting Defendants. (Pl.'s Br. 16.) He also requests punitive damages in the

range of $20,000 to $175,000 against Figueroa and an unspecified smaller punitive damages

award against Capella in light of the fact that Capella did not hit him. (*Id.* at 19.) In his brief,

Mr. Francis does not allocate damages to each of his causes of action; rather, he requests

aggregate amounts from each Defendant.

### 1. Damages for Section 1983 Violations

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986) (citations omitted). "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights . . . ." *Carey v. Piphus*, 435 U.S. 247, 254 (1978); *see also Bermudez v. City of New York*, 11 Civ. 750 (LAP), 2014 WL 11274759, at *6 (S.D.N.Y. Mar. 25, 2014) ("Section 1983 civil actions rely on the same analysis as state common law tort actions and serve the same primary goal of compensation." (citations omitted)).   Thus, a plaintiff must prove that his injuries were proximately caused by the constitutional violation. *See BD ex rel. Doe v. DeBuono*, 193 F.R.D. 117, 139 (S.D.N.Y. 2000) (citing 36 N.Y.Jur.2d Damages § 13 (1984)).  Moreover, the "damages recoverable . . . cannot be contingent, uncertain, or speculative . . . ." *Id.* (internal quotation marks and citation omitted).

Punitive damages also may be awarded in a Section 1983 case if the plaintiff shows that the defendant's conduct was motivated by "'evil motive or intent'" or involved "'reckless or callous indifference to the federally protected rights of others.'" *Amid v. Chase*, 720 F. App'x 6, 13 (2d Cir. 2017) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Such damages may be awarded against a state or local official acting in an individual capacity.  *Smith*, 461 U.S. at 35, 56.  "Unlike compensatory damages, which must be awarded to compensate a plaintiff for his or her loss, punitive damages are discretionary and may be awarded where the trier of fact finds that such an award serves the purpose of punishment or deterrence." *Colon*, 2012 WL 691544, at *15 (first citing *Smith*, 461 U.S. at 52; then citing *McFadden v. Sanchez*, 710 F.2d

907, 913 (2d Cir. 1983)).  The purpose of punitive damages is to punish a defendant and deter

him and others from similar conduct in the future.  *See Pacific Mut. Life Ins. Co. v. Haslip,* 499

U.S. 1, 21 (1991); *Vasbinder v. Scott,* 976 F.2d 118 (2d Cir. 1992); *Colon,* 2012 WL 691544, at *15

("Under *Smith,* courts have held that an award of punitive damages is appropriate where it has

been shown that the defendant actually derive[d] satisfaction from hurting the plaintiff or if

defendant, while not having any particular desire to hurt the plaintiff, trample[d] on the

plaintiff's rights, in a fashion that can fairly be called reckless, to accomplish his own aims."

(internal quotation marks and citation omitted, alterations in original)).  The size of the award

should necessarily vary with the severity and egregiousness of the conduct involved and should

not result in the defendant's financial ruin or constitute a disproportionate percentage of his

wealth.  *Vasbinder,* 976 F.2d at 121.

In this case, there is undoubtedly evidence of evil intent and, at the very least, reckless

indifference to Plaintiff's right to be free from arrest and prosecution without probable cause.

Defendants were trained peace officers who knew their false report claiming that Plaintiff had

assaulted a peace officer would result in his arrest and prosecution.  *See Sulkowska v. City of*

*New York,* 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) (finding that officer acted with reckless

disregard for plaintiff's rights by falsely arresting and maliciously prosecuting her to serve the

collateral objective of closing the bar plaintiff owned).  Thus, I address both compensatory and

punitive damages for Plaintiff's Section 1983 causes of action below.

### a.  False Arrest Damages

Here, in connection with his false arrest, Plaintiff seeks damages for: his loss of liberty

from being detained for nearly 14 hours; emotional pain and suffering that caused him

significant loss of sleep; humiliation and embarrassment in front of his family; paranoia from a

fear of being falsely targeted again by law enforcement; and a loss in his sense of security in his

own neighborhood. The Second Circuit has held that, under New York law, damages

recoverable for loss of liberty are separate from damages caused by "physical harm,

embarrassment, or emotional suffering . . . ." *Kerman v. City of New York*, 374 F.3d 93, 125–26

(2d Cir. 2004); *see also Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir.

1990) ("[T]he damages for deprivation of liberty redress the denial of free movement and the

violation done to [an individual's] dignity as a result of the unlawful detention, and not the

physical and mental injuries arising from the incident."). Here, I address these damages

separately, but note that there are a number of decisions where they are not treated

separately.

### i.    Loss of Liberty

In determining an appropriate award for loss of liberty from a false arrest, the Court

looks to damages awarded in comparable cases. Courts within this Circuit have awarded

anywhere from $10,000 to $200,000 for short periods of confinement. *See Kerman*, 374 F.2d at

126 (collecting cases); *Gardner,* 907 F.2d at 1353 (ordering the remittitur of a $300,000 jury

award to $200,000 for approximately eight hours of imprisonment)*; Lovitch*, 2015 WL 1047807,

at *13 (after damages inquest, court awarded $10,000 to plaintiff who was arrested and

detained for a short period of time and prosecuted based on false accusations and suffered no

physical injuries); *Colon*, 2012 WL 691544, at *15 (recommending undifferentiated lump sum

awards of $50,000 and $65,000 to two plaintiffs for emotional distress damages *and* being

detained 36 and 48 hours, respectively, because of false information provided by police officers

that led to plaintiffs' arrest); *Martinez v. Gayson,* No. 95–CV–3788 (ILG), 1998 WL 564385, at \*6

(E.D.N.Y. June 30, 1998) (ordering a remittitur of a $310,000 jury award to $160,000 for five

hours of imprisonment); *Mason v. City of New York,* 949 F. Supp. 1068, 1076 (S.D.N.Y. 1996)

(ordering a remittitur amount of $10,000 for two hours of imprisonment); *Bert v. Port Auth. of

New York and New Jersey,* 166 A.D.2d 351, 561 N.Y.S.2d 416 (App. Div. 1st Dep't 1991)

(awarding $100,000 for three-and-a-half hours of imprisonment *and* humiliation combined);

*Hollender v. Trump Vill. Coop.,* 97 A.D.2d 812, 468 N.Y.S.2d 683 (App. Div. 2d Dep't 1983)

(ordering a remittitur amount of $10,000 for false arrest); *Woodard v. City of Albany*, 81 A.D.2d

947, 439 N.Y.S.2d 701 (App. Div. 3d Dep't 1981) (remitting an award of $16,000 to $7,500 for

five hours of detention).  The amounts awarded in these cases, however, should be adjusted for

inflation. *See Allam v. Meyers*, 906 F. Supp. 2d 274, 289 (S.D.N.Y. 2010).  Making this

adjustment, it appears that plaintiffs have been awarded anywhere from about $1,500 to

$35,000 per hour of unlawful detention and/or a combination of hours of unlawful detention

and physical and emotional injuries.

When a plaintiff has suffered no physical injury and has not consulted any doctors for

physical or emotional injuries, the awards fall on the lower end of that range.  The Court also

notes that the cases surveyed above included damages awarded after an inquest, damages

awarded by juries, and damages awarded by juries that were reduced by courts.  The damages

awarded on inquest are typically lower than damages awarded by juries or by courts on

remittitur.[5]  This is because when a court determines that remittitur is appropriate, it remits the

---

[5] A jury award of compensatory damages is a factual determination, whereas a jury award of punitive damages is
"an expression of its moral condemnation."  *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432
(2001).  A court may reduce an award of damages if it is "so high as to shock the judicial conscience and constitute

jury's award to the "maximum amount that would not be excessive." *See Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 261 (S.D.N.Y. 2007) (internal quotation marks and citation omitted) (remitting compensatory damages award).

This case is most comparable to the recent *Colon* and *Lovitch* cases cited above, both which involved an arrest based on false information and relatively few hours of confinement. Based on the number of hours of confinement in this case —13.5 — and based on a review of comparable cases, I find that an award on the lower end of the range at a rate of $2,000 per hour is appropriate.  Thus, I recommend that Plaintiff be awarded $27,000 in compensatory damages for his period of detention stemming from his false arrest.

### ii.    Compensatory Damages for Emotional Distress

Additionally, Mr. Francis claims that his arrest caused him to suffer from: emotional distress, that manifested itself as sleeplessness; humiliation and embarrassment in front of his family; paranoia from a fear of being falsely targeted again by law enforcement; and a loss of his sense of security in his own neighborhood.  His only evidence of these injuries is one paragraph in his affidavit.  Notably, Plaintiff does not specify the timeframe during which his sleep was affected.  Further, there is no evidence that he consulted with any psychiatrist, therapist or other medical provider in connection with his distress.  Additionally, Plaintiff does not claim that his family relationships were injured.  In short, here, there is scant evidence of emotional distress.

---

a denial of justice." *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997) (internal quotation marks and citation omitted).  In ascertaining this, a court looks to amount awarded in other, comparable cases.  *Id.*

New York courts typically differentiate between "garden variety emotional distress claims that do not require medical attention and more complex claims resulting in a psychiatric injury." *Menghi v. Hart,* 745 F. Supp. 2d 89, 106 (E.D.N.Y. 2010) (citation omitted). This analysis is similar to that used by the Second Circuit, which groups "[e]motional distress awards . . . into three categories of claims: garden-variety, significant, and egregious." *Olsen v. County of Nassau,* 615 F. Supp. 2d 35, 46–47 (E.D.N.Y. 2009) (internal quotation marks and citation omitted) (collecting cases); *Menghi,* 745 F. Supp. 2d at 106; *Jessamy v. Ehren,* 153 F. Supp. 2d 398, 401 (S.D.N.Y. 2001).

Mr. Francis concedes that his emotional distress is of the garden variety.  In this Circuit, awards for garden variety emotional distress range from $30,000 to $125,000.  *See MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 561 (S.D.N.Y. 2012) (collecting cases). "Where a plaintiff offers only sparse evidence of emotional distress, however, courts have reduced such awards to as little as $10,000." *Id.* (collecting cases); *see also Kerman*, 374 F.3d at 123 (nominal damages awarded for claims of minor physical, mental, and emotional injury and jury appropriately rejected claim of injury); *Sulkowska,* 129 F. Supp. 2d at 308–309 (police officer defendants were jointly and severally liable for damages award of $275,000 for emotional injuries stemming from false arrest and malicious prosecution of 75-year-old woman who was diagnosed with post traumatic stress disorder due to the incident); *Tretola v. County of  Nassau*, 14 F. Supp. 3d 58 (S.D.N.Y. 2014) ($175,000 jury award for plaintiff's humiliation, damage to his reputation, anger at having to go to court between 16 and 18 times, anxiety about impact to his business, trouble sleeping, embarrassment, weight gain, and four hours of detention); *Thomas v. Kelly,* 903 F. Supp. 2d 237 (S.D.N.Y. 2012) (declining to reduce jury award

of $125,000 for false arrest following domestic disturbance where plaintiff was handcuffed in front of his girlfriend, stepped on by officers, scared, confused, and humiliated).

In this case, plaintiff has offered little evidence of emotional distress besides the single-paragraph statement in his affidavit. While being falsely arrested understandably caused Mr. Francis distress, as it would anyone, the Court finds that Plaintiff has proved no more than minimal damages. Therefore, I recommend an award of $10,000 for Plaintiff's emotional distress claims.

### iii.    Punitive Damages

There is no "simple mathematical formula" to determine the amount of a punitive damages award. *BMW of N. Am. v. Gore,* 517 U.S. 559, 582 (1996). Any punitive damages award must be reasonable and rational in light of its purpose to comport with due process. *Id.* at 587. In the context of evaluating whether a jury award of punitive damages is excessive, the Supreme Court has set forth three "guideposts" to be considered: "1) the degree of reprehensibility of the defendant's conduct, 2) the disparity between the punitive damages award and the harm caused to the plaintiff, and 3) 'the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'" *Johnson v. Dumphy,* No. 09–CV–2758 (ILG), 2011 WL 6101957, at *6 (E.D.N.Y. Nov. 14, 2011) (quoting *Gore,* 517 U.S. at 575), *adopted by* 2011 WL 6111236 (E.D.N.Y. Dec. 7, 2011).

Whether these same considerations apply in the context of a post-default damages inquest is not settled in this District. *See Poulos v. City of New York*, No. 14-CV-03023 (LTS) (BCM), 2018 WL 3750508 (S.D.N.Y. July 13, 2018), *adopted by* 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *compare Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 WL 1738746, at *9 n.7

(S.D.N.Y. Apr. 10, 2018) (finding that the *Gore* factors are "to be used to review jury awards and/or lower court awards on appeal—not to determine the award itself"), *adopted by* 2018 WL 2088279 (S.D.N.Y. May 3, 2018); *with Dixon v. Agbai*, No. 15 Civ. 850 (AT) (AJP), 2016 WL 3702749, at *8 (S.D.N.Y. July 8, 2016) (applying *Gore* factors for purposes of damages inquest in Section 1983 excessive force action), *adopted by* 2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016); and *Knox v. City of Putnam*, No. 10 Civ. 1671(ER), 2014 WL 7330851, at *9–10 (S.D.N.Y. Dec. 23, 2014) (applying *Gore* factors to assess punitive damages in inquest after default in malicious prosecution action).

In *Poulos*, the Honorable Barbara S. Moses reconciled the different approaches by concluding that:

> [T]he assessment of punitive damages at inquest should begin with an understanding of the range of damages awarded in comparable cases after trial (and after any remittiturs), as well as an analysis of any features that distinguish the case at bar. The *Gore* factors can then be utilized, if necessary, to ensure that the proposed award is not grossly excessive.

*Poulos*, 2018 WL 370508, at *6. This Court agrees with Judge Moses's approach. Therefore, I will first survey cases to determine the range of punitive damages awarded in comparable cases. This step corresponds with the third *Gore* factor. The purpose of the third factor is to ensure that the defendant had notice that his or her actions could result in a comparable punitive damages award. *See DiSorbo v. Hoy*, 343 F.3d 172, 188 (2d Cir. 2003). The Second Circuit has noted that when the defendant is a police officer, his "'training as a police officer gave him notice as to the gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career.'" *Id.* (quoting *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996)).

20

My survey of comparable cases reveals that punitive damages awards range from $7,500 to $150,000 in similar cases. *See Posr v. Doherty,* 944 F.2d 91, 95 (2d Cir. 1991) (awarding $10,000 in punitive damages for excessive force plus $10,000 for false arrest); *Ismail v. Cohen,* 899 F.2d 183 (2d Cir. 1990) (awarding $150,000 in punitive damages for false arrest and excessive force arising out of dispute from traffic ticket); *Nieman v. Whalen,* 928 F. Supp. 296, 301 (S.D.N.Y. 1996) (reducing jury award of $200,000 in punitive damages to $40,000 in case where police officer coerced a confession from plaintiff leading to arrest and prosecution), *aff'd,* 107 F.3d 3 (2d Cir. 1997). I also note that at least one court has declined to recommend a punitive damages award in a similar context. *See Colon,* 2012 WL 691544, at *17 (in case where false information provided by defendants caused arrest and prosecution, court found punitive damages were warranted but declined to award any because plaintiff provided no information about the defendants' ability to pay).

Here, Plaintiff requests damages within the accepted range. Specifically, he seeks an award in the range of $20,000 to $175,000 against Figueroa and an unspecified smaller punitive damages award against Capella. This case is most like *Nieman*, in which the court remitted damages to $40,000, because the degree of reprehensibility of Defendants' conduct here is similar. Here, two trained peace officers assaulted Plaintiff for no reason and, when they realized that he reported their conduct, filed false reports against Plaintiff hoping to avoid scrutiny. Little did they realize that the surveillance video would reveal them to be liars. It is beyond dispute that Defendants knew what they were doing was wrong. In light of the harm caused to Mr. Francis by their lies, which led to his arrest and detention for nearly fourteen hours, I recommend that punitive damages in the amount of $40,000 be awarded and that

Defendants be jointly and severally liable for this amount since they both made false reports. This results in a ratio of approximately 1:1 between the compensatory and punitive damages. This ratio comports with due process and the ratios of damages awarded in similar cases. *See, e.g.*, *Posr,* 944 F.2d at 95 (awarding $10,000 in punitive damages for excessive force plus $10,000 for false arrest). In making this recommendation, I am also mindful that Defendants both lost their jobs as a result of their conduct and that a punitive damages award should not result in a defendant's financial ruin. *See Vasbinder*, 976 F.2d at 121.

### b. Malicious Prosecution Damages

In this Court's view, the bulk of Plaintiff's damages from his Section 1983 claims stem from his false arrest, which accounts for injuries from the beginning of custody to arraignment. Malicious prosecution damages are designed to compensate a plaintiff for post-arraignment injuries. *See Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir. 1992); *see also Stampf v. Long Island R.R. Auth.*, No. 07–CV–3349 (SMG), 2011 WL 3235704, at *9 (E.D.N.Y. July 28, 2011) (recognizing that "the impact upon the feelings, reputation and character by a false accusation as well as that caused by arrest and imprisonment . . . is in many cases the gravamen of the [malicious prosecution] action." (internal quotation marks and citation omitted, alteration in original)), *aff'd and vacated in part sub nom. Stampf v. Long Island R. Co.*, 761 F.3d 192 (2d Cir. 2014). Here, Plaintiff returned to court only three times to obtain dismissal of the charges against him. As such, most of the emotional distress damages, including fear and humiliation, flow directly from the assault and initial arrest—not from presenting and ultimately succeeding on his defense.

Awards of compensatory damages for malicious prosecution claims, separate from claims of false arrest, are typically relatively low.  In cases where there is also a claim of false arrest, courts often award a lump sum amount for both claims.  *See, e.g., Johnson v. City of New York*, No. 15 Civ. 5873 (ENV) (VMS), 2019 WL 4279572 (E.D.N.Y. Aug. 2, 2019) ($75,000 in emotional distress damages awarded in case where plaintiff arrested based on false statement made to police), *adopted by* 2019 WL 4279030 (E.D.N.Y. Sept. 10, 2019); *Williams v. Dash*, JVR No. 1405220012, 2014 WL 2120618 (Sup. Ct. Mar. 18, 2014) (jury awarded $50,000 in compensatory damages for malicious prosecution where plaintiff was arrested and arraigned fourteen hours later, before the charges were dismissed).

New York law permits a lump-sum, combined award for false arrest and malicious prosecution so long as the damages are not duplicative.  *See, e.g., Jeon v. Hee*, No. 11–CV–974 (RJD)(VMS), 2015 WL 789984, at *3  (E.D.N.Y. Feb. 24, 2015) ("On a malicious prosecution claim, a plaintiff may obtain damages for the direct, natural and proximate results of the criminal prosecution, including those for suffering arrest and imprisonment . . . ." (internal quotation marks and citation omitted)); *Putnam v. County of Steuben*, 61 A.D.3d 1369, 1371–72 (App. Div. 4th Dep't 2009) ("Damages for malicious prosecution are recoverable for injuries caused by an arrest and imprisonment and, where there are causes of action for both false arrest and malicious prosecution," so long as the damages are not duplicative).

Here I find that Mr. Francis's damages from his malicious prosecution alone are nominal in relation to his damages stemming from his false arrest.  Accordingly, I recommend an award of $1 against each Defendant for the malicious prosecution claim.  Similarly, I find that the punitive damages award recommended above accomplishes the purpose of punishing

Defendants for their submission of false reports that led to Plaintiff's arrest and prosecution and deterring Defendants and others from similar conduct in the future. Therefore, I do not recommend additional punitive damages in connection with this cause of action.

### 2. *Damages for Assault*

When assessing damages for the tort of assault, the Court looks at damages awarded in comparable cases, just as it does for Section 1983 claims. In evaluating the appropriate damages, the Court notes that Figueroa instigated the entire incident, and was the only person who took part in the physical violence that ensued. At the same time, Cappella sanctioned Figueroa's behavior by declining to intervene and joining others in surrounding Plaintiff and enabling Figueroa. Had Capella stopped Figueroa, Plaintiff may not have complained, and Capella would not have lost his job. Unfortunately, he chose not to stand up for what is right. In this Court's view, Capella's failure to stop what was clearly wrong behavior was just as reprehensible as Figueroa's behavior. Accordingly, the Court recommends that similar damages be assessed against both Defendants.

Damages awards in similar assault cases vary considerably based on the facts and circumstances of the case and the severity of the physical contact and injury. *See, e.g., Wright v. Musanti*, 887 F.3d 577 (2d Cir. 2018) (in case where a pedestrian kicked another pedestrian in the legs and filed a false police report against him, court awarded $1 for assault, $5,000 in compensatory damages, and $10,000 in punitive damages); *Dancy v. McGinley*, 843 F.3d 93, 113 (2d Cir. 2016) (affirming award of $81,500 where 17-year-old plaintiff suffered abrasions on face, head, and torso following excessive force used by police officer); *Medina v. Donaldson*, No. 10 Civ. 5922(VMS), 2014 WL 1010951, at *1–2 (E.D.N.Y. Mar. 14, 2014) (upholding a jury

award of compensatory damages in the amount of $5,000 and punitive damages in the amount

of $16,000 where a police officer used excessive force by punching plaintiff while he was

handcuffed and laying in the back of a police car, causing physical and emotional injury,

including a gash and bruising to his right eye, dizziness that lasted for two to three weeks, pain

requiring painkiller medication for three to four months, a worsening of his pre-existing post-

traumatic stress disorder, and nightmares); *Zhiwen Chen v. County of Suffolk,* 927 F. Supp. 2d

58, 60, 67–68 (E.D.N.Y. 2013) (denying motion for a new trial where jury awarded plaintiff

$20,000 in compensatory damages for incident where officers repeatedly punched and kicked

plaintiff after she was handcuffed, causing no fractures, but leaving abrasions on her face, arms,

legs, wrists, and hands, bruises on her upper arms and knees, and pain that lasted for two

weeks); *Poznyakovskiy v. City of New York*, No. 06 CV 4342(JG), 2008 WL 842438 (E.D.N.Y. Mar.

11, 2008) ($50,000 awarded for strike on head with baseball bat, resulting in loss of

consciousness, five-centimeter laceration, humiliation, and headaches); *Lewis v. City of Albany

Police Dep't*, 547 F. Supp. 2d 191, 206 (N.D.N.Y. 2008) (sustaining award of $65,000 where

police officer stood on plaintiff's head and pushed his face into the asphalt, causing pain and

suffering for weeks thereafter), *aff'd*, 332 F. App'x 641 (2d Cir. 2009); *Romaine v. Rawson,* 140

F. Supp. 2d 204, 214 (N.D.N.Y. 2001) (awarding prison inmate $1,000 for physical injuries and

pain and suffering and $500 for punitive damages, where he was physically struck across the

left side of his face three times by corrections officer); *see also O'Hara v. McAvoy,* No. 11– CV–

3990, 2013 WL 4507067 (E.D.N.Y. Aug. 22, 2013), *aff'd sub nom. O'Hara v. City of New York*, 570

F. App'x 21 (2d Cir. 2014) (upholding jury award of $50,000 in compensatory damages to a

seventeen-year-old plaintiff who, after being punched in the face and falling to the ground, was

punched at least four more times while attempting to shield his body in the presence of six officers, but declining to award punitive damages).

In this case, Plaintiff suffered minimal physical injuries. He attests only that he felt pain when Figueroa kicked him. Plaintiff did not fall to the ground. Plaintiff does not state whether he was bruised, and apparently did not seek any medical attention for any injuries he may have suffered. As for emotional injury, Plaintiff attests that he was put in fear of physical harm during the assault. It is unclear from his affidavit whether his claimed emotional distress, loss of sense of security in his neighborhood, fear of the police, and sleeplessness were also caused by the assault. Nevertheless, based on awards given in similar cases, the Court finds that an award of $1,000 in compensatory damages for Plaintiff's claimed physical and emotion pain is warranted. The Court finds that punitive damages in the amount of $5,000 are appropriate in light of the completely unjustified acts of both Defendants, who as peace officers, are entrusted to prevent violence and protect citizens, not instigate violence and create an atmosphere that damages the public's perception of law enforcement and undermines the ability of law enforcement to do its job. Their actions were violent and sanctioned violence and were clearly done with malice, as opposed to negligence.

## CONCLUSION

In sum, I respectfully recommend that Plaintiff be awarded $27,000 for his loss of liberty and $10,000 for emotional distress and other compensatory damages with respect to his claim of false arrest, $2 in compensatory damages for his claim of malicious prosecution, and $1,000 in compensatory damages for his claim of assault. I recommend that Plaintiff be awarded the aggregate amount of $40,000 in punitive damages in connection with his claims of false arrest

and malicious prosecution.  And finally, I recommend that Plaintiff be awarded $5,000 in

punitive damages in connection with his claim of assault.  The total recommended damages

award, therefore, is $83,002. I recommend that Defendants be jointly and severally liable for

these damages.

The Court notes that Plaintiff settled with the other Defendants in this action.  There is a

split of authority as to whether a defaulting defendant is entitled to a set-off.  *Colon*, 2012 WL

691544, at *17; *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 446–47 (S.D.N.Y. 2009)

(holding that under New York law, a defaulting defendant is not entitled to a set-off based on a

co-defendant's settlement); *but cf., State Farm Mut. Auto Ins. Co. v. Kalika,* No. 04-CV-4631

(CBA)(RML), 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) (reducing a default judgment

based on a settlement by other co-defendants but without discussing the set-off rule).  In this

case, because no party has briefed the issue, I recommend that no set-off be implemented at

this time, but that the denial of set-off be without prejudice, to the extent Defendants

challenge this decision and wish to make a timely argument for set-off.

Respectfully submitted,

Dated:   November 12, 2019
         New York, New York

KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

Plaintiff shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d), (D) (leaving with the clerk), or (F) (other means consented to by the parties). Defendants shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

If Plaintiff files written objections to this Report and Recommendation, Defendants may respond to Plaintiff's objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendants file written objections, Plaintiff may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Judge Vernon S. Broderick at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).